THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CANDACE BOCK, Defendant-Appellant.

First District (6th Division)   No. 1—03—2273

Opinion filed April 22, 2005.—Rehearing denied May 18, 2005.

Edwin A. Burnette, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Michelle Katz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

After a bench trial, defendant Candace Bock was found guilty of driving while under the influence of alcohol (DUI) and improper lane usage; she was given a conditional discharge sentence of one year of supervision, which included a requirement that she attend alcohol education classes, perform 10 days of community service, and pay $505 in fines. She appeals the DUI conviction, contending that she was improperly cross-examined with the results of an unreliable preliminary Breathalyzer test; that she was prejudiced by the admission of evidence that she was told of the civil penalties for refusing to take a second breath test; that she was denied her constitutional right to the effective assistance of counsel by her counsel's failure to present expert testimony of the effect of her use of prescription medications; and that she was not proved guilty beyond a reasonable doubt. We affirm.

## BACKGROUND

### 1. Testimony of Officer Drews

South Barrington police officer Steven Drews testified that on July 13, 2002 at approximately 9:15 p.m., he was on duty and driving his marked squad car when an oncoming white truck drove partly onto the center line dividing the two lanes of traffic. Drews swerved to the shoulder of his lane, then turned his car around to pursue the truck, and saw it again drive its left-side wheels onto the center line. The truck pulled over, and Drews saw that its only occupant was the driver, defendant Candace Bock, who was talking on a cellular phone. Drews asked Bock to roll down her window; she instead opened the door of the truck.

Drews testified that he observed Bock's eyes to be "red," "glassy," and "bloodshot," and that he noticed the strong smell of alcohol on her breath. Bock produced her driver's license and proof of insurance, and Drews asked her to exit the truck and walk to its rear. According to Drews, Bock "was swaying a little bit" as she walked to the back of the truck. Drews said that Bock told him that she needed to speak to her children, that she began another cell phone call, and that he observed slurring of her speech in her conversation with him and on the phone.

Drews estimated that, approximately two to three minutes after he stopped Bock's truck, two of his fellow officers joined the scene. One of them, Officer Haniszewski, administered an initial field sobriety test to Bock: the horizontal gaze nystagmus test, which Drews had not yet been trained to perform. Drews then asked Bock to

perform a "walk-and-turn" test on a yellow line at the shoulder of the road. Drews testified that he instructed Bock to take nine heel-to-toe steps on the line with her hands at her sides, turn, and return in the same manner. According to Drews, Bock "danced" down the line, waving her arms as she went, stepping from side to side and failing to take any heel-to-toe steps. Drews concluded that Bock failed this sobriety test.

Drews then testified to the administration of a second test, which required Bock to stand with one foot raised approximately six inches and her hands at her sides while counting off the passing of 30 seconds. According to Drews, Bock raised one foot "probably an inch or two off the ground," with her arms extended away from her sides, before he finished his instructions to her. Drews said that Bock was unable to keep her balance, swayed from side to side, put her foot down after "2 to 3 seconds," and told the officers to perform the test themselves. Drews concluded that Bock failed this sobriety test.

According to Drews, after Bock failed the leg-raise test, he informed her that she was under arrest, and he and Officer Haniszewski took positions on either side of her to escort her to Drews' squad car. Drews reported that Bock "went limp" on the way to the car and that she had to be dragged approximately 5 feet of the 10- to 15-foot distance to his vehicle. Bock regained her feet before reaching the squad car, walked the rest of the way to it, but then held her arms out to prevent entry into the car. Drews said that he told her to get into the squad car "six to seven times" without success and that Haniszewski finally told her that if she did not enter the car voluntarily, she would be pepper-sprayed. Drews testified that Bock responded with "some choice words" and dared Haniszewski to spray her. Haniszewski warned Drews that he was about to use the spray and then sprayed Bock, which resulted in her submitting to entry into the police vehicle.

After Bock was secure inside his car, Drews went back to her truck and found a Styrofoam cup in the truck's center console; the cup contained a blue liquid which smelled to Drews like alcohol. He dumped the contents of the cup out on the side of the road.

Drews decided that, due to Bock's "combative nature," he preferred to take her to a larger police facility than the South Barrington station and drove her to a Hoffman Estates police department station. Drews said that during the ride to the station, Bock said several times that she wanted to kill herself. Once at the station, Bock refused to exit Drews' car voluntarily and had to be removed by Hoffman Estates police officers. Drews reported that Bock was at the Hoff-

man Estates station for approximately 20 minutes for booking, that she was taken by the Hoffman Estates fire department to St. Alexius Hospital, and that she was uncooperative there, having to be restrained by hospital staff and spitting in the face of a nurse.

Drews testified that he had observed people under the influence of alcohol more than 100 times and that, as a result of his observation of Bock's failure of field sobriety tests, the odor of alcohol from her breath, and her erratic driving, he concluded that she had been under the influence of alcohol. On cross-examination, defense counsel asked Drews if he had asked Bock if she was on any kind of medication or if he thought that she was on medication, and Drews gave negative responses to both questions.

## 2. Testimony of Officer Haniszewski

Officer Haniszewski testified next and reported that, when he arrived on the scene of Bock's arrest, she was still inside her truck. He saw her exit the vehicle and observed "her lack of balance" as she did so, describing her motions as "almost wobbling and swaying, falling over." Haniszewski heard slurring of Bock's speech when she spoke to Drews, and when he got closer to her, he noticed alcohol on her breath and "bloodshot, glassy eyes."

Haniszewski administered the horizontal gaze nystagmus test to Bock, in which he asked her to follow the movement of an object with her eyes while keeping her head motionless. Haniszewski observed that Bock's eyeballs were unable to smoothly track the horizontal motion of his pen and that there was distinct oscillation of her eyeballs as they moved. Haniszewski concluded that Bock failed this sobriety test.

Haniszewski observed Bock's performance of the walk-and-turn test and the leg-raise test, and his testimony regarding her failures of both tests matched that of Drews. Haniszewski then described Bock's refusal to enter Drews' squad car after being told that she was being placed under arrest. He said that Bock was shaking, that while handcuffed, she reached for and grabbed his gun, which was holstered at his side, and that when asked about this action, she answered, "yeah, I should grab it and I should shoot myself." Haniszewski's testimony about Bock's behavior at the police station and at the hospital also corroborated the descriptions given by Drews.

On cross-examination, Haniszewski described Bock's shoes as being flat-soled and agreed that there were stones and rocks at the side of the road on which the vehicles were stopped. On redirect, Haniszewski explained that the field sobriety tests were conducted on flat, newly paved asphalt, not on the rocky roadside. He then reported that

at the police station, Drews asked Bock to submit to additional blood-alcohol testing and that Bock responded with a profanity. At this point, the prosecution rested, and Bock's counsel made an unsuccessful motion for a directed verdict.

### 3. Testimony of Defendant Bock

Bock then testified that she was driving home and talking on her cellular phone when she was pulled over by Drews and that her vehicle "must have" crossed the center line. She further testified that at the time, she was taking two prescription medications, Zoloft and Ativan. According to Bock, Haniszewski administered the horizontal gaze test to her, and Drews then asked her to perform the walk-and-turn test. Bock said that she was wearing flat shoes at the time, "on which I don't walk too well," and that she asked Drews to perform the walk-and-turn test himself. Bock said that Drews "tipped over" after about three steps of his attempt to perform the walk-and-turn test, that she told him not to expect her to be able to perform a task that he could not do himself, and that she asked to be given some different kind of sobriety test.

Bock said that her request for different testing was refused and that Drews and Haniszewski then told her that she was under arrest and pushed her into a squad car. Bock said that she did not resist and that, when she was about halfway into the car, Haniszewski sprayed her with pepper spray. Bock concluded that she had not been under the influence of alcohol at the time of the incident.

On cross-examination, Bock admitted that at an event which began approximately five hours before her arrest, she drank "approximately three" alcoholic beverages. She denied dancing during the walk-and-turn test, but indicated that she did attempt to avoid standing still for very long because of a lower back problem which caused numbness in her leg if she did not keep in motion.

Bock was then asked if she had submitted to a Breathalyzer test before being handcuffed. Her counsel objected, and when asked for the basis of the objection, he responded, "Judge, I don't think it's admissible." The court responded, "It's not admissible on the case in chief but it is admissible for impeachment purposes." The prosecution then continued with questioning on the subject, asking if the third officer who joined the group, Officer Dobinski, had asked her to breathe into a machine. Bock denied that any such thing had occurred. She was asked whether Dobinski had shown her the result of the test, and she answered, "No." The prosecution then asked, "He showed you that the result was a point one-five; isn't that correct, Mrs. Bock?" Bock

again answered, "No," her counsel again objected, the trial court remarked, "It's for impeachment purposes," and the answer was allowed to stand. Bock then testified that the liquid in the Styrofoam cup found in her truck was "Pepsi Blue."

The prosecution then asked Bock if she had been told at the station "what would happen to [her] license" if she refused to take a Breathalyzer test there, and her counsel objected that the subject was beyond the scope of direct examination. The trial court overruled the objection: "Once your client hits the stand, the State is able to cross-examine regarding anything relevant." Bock initially conceded that she "vaguely" remembered the admonition and that, when offered the opportunity to take a breath test at the station, she refused. Asked for further confirmation of the circumstances of her refusal, Bock said, "I don't remember him ever asking me if I wanted to blow into a machine because at the time I was a little upset or maybe a lot upset after being pepper sprayed." Questioned again about her refusal, Bock again said, "I don't think he asked me."

On rebuttal, the prosecution recalled Officer Drews, who testified that Officer Dobinski was also on the scene of Bock's arrest. Drews testified that Dobinski administered a Breathalyzer test to Bock and that he did not see the result of the test.

### 4. Trial Court Findings

Bock had been charged with resisting arrest, transportation of an open container of alcohol, improper lane usage, and driving while under the influence of alcohol. The trial court found that there was *insufficient evidence to establish* Bock's guilt of the resisting arrest and alcohol transportation charges and found her not guilty of those offenses. Citing Bock's admission of driving over the center line, the court found her guilty of improper lane usage. The court then turned to the evidence of driving under the influence of alcohol: "There is no doubt in my mind that your client was, in fact, under the influence of alcohol. It may have been enhanced by the medication that she was taking but a normal reasonable person does not act in the manner in which she does. The evidence was glassy, bloodshot eyes, slurred speech, strong odor of alcohol and the other characteristics which the officer testified to. Accordingly, there is a finding of guilty." For the DUI offense, Bock was ordered to pay a fine of $505 and given one year of supervision, which included 10 days of community service and a requirement that she complete two alcohol education classes. In the instant appeal, she seeks review of the DUI conviction and sentence.

## ANALYSIS

### 1. Admission of Preliminary Breathalyzer Test Evidence

■ Bock's initial contention on appeal is that the trial court improperly allowed testimony regarding results of the preliminary Breathalyzer test administered to her at the scene of the arrest by Officer Dobinski. Noting that our state has enacted statutory standards for methods of testing blood-alcohol level (625 ILCS 5/11—501 *et seq.* (West 2000)), and that the portable, preliminary Breathalyzer machines such as that used by Dobinski do not meet such standards, Bock asserts that results from such preliminary tests may not be used in the prosecution's case in chief to establish guilt of the offense of driving under the influence of alcohol. See *People v. Brooks*, 334 Ill. App. 3d 722, 727 (2002).

While we agree with this assertion, we do not believe that this general statement of principle provides a basis for reversal of Bock's conviction in the instant case. Evidence regarding the preliminary test was not introduced in the prosecution's case in chief. It was instead presented in response to Bock's assertion that she became irritated with the arresting officers only after they refused to give her a sobriety test other than an unreasonably difficult walk-and-turn test. In overruling the objection to the admission of the preliminary test evidence, the trial court was explicit in establishing the purpose for which it was allowed: "It's not admissible on the case in chief but it is admissible for impeachment purposes." We believe that admission of the evidence for this purpose was proper.

In *People v. Jefferson*, 184 Ill. 2d 486 (1998), our supreme court considered a defendant's objection to the admission of evidence that she had been asked to take a polygraph examination; the court noted that due to the inherent unreliability of such examinations, evidence regarding their administration is generally inadmissible in Illinois. 184 Ill. 2d at 492-93. In *Jefferson*, however, the defendant alleged that her confession was produced by coercion, and evidence that she had been asked to take the polygraph exam and had agreed to do so immediately before her confession was offered to rebut this allegation. 184 Ill. 2d at 495.

The *Jefferson* court concluded that admission of the evidence for this purpose was appropriate. "Not allowing the State to introduce this evidence would have left the jurors with a misleading impression about the circumstances in which the defendant made her confession." 184 Ill. 2d at 496. "Our result here is consistent with decisions in analogous circumstances allowing the introduction of otherwise

inadmissible evidence for a limited purpose. *Tennessee v. Street*, 471 U.S. 409, 85 L. Ed. 2d 425, 105 S. Ct. 2078 (1985); *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971); *People v. Kokoraleis*, 132 Ill. 2d 235, 259-61 (1989). As the preceding cases demonstrate, evidence that is inadmissible may become admissible if the defense opens the door to its introduction." *Jefferson*, 184 Ill. 2d at 496-97.

We believe that the rationale of *Jefferson* applies with equal force to the case at bar: preliminary breath test evidence, like polygraph exam evidence, is considered insufficiently reliable to serve as substantive evidence of a charged offense, but, under appropriate circumstances, such evidence may be admissible for the limited purpose of rebutting a defendant's contrary testimony. In the instant case, evidence of Dobinski's administration of the preliminary test to Bock at the arrest scene was offered to contradict her description of the events which produced her agitated state, not to provide substantive proof of her intoxication, and the trial court unequivocally expressed the limited use which would be made of that evidence. Our conclusion that the trial court properly limited its consideration of the preliminary test evidence is further supported by the court's recitation of the factors which demonstrated Bock's intoxication: the court listed the testimony of the arresting officers regarding her appearance and behavior, but made no mention of the preliminary test or the alleged result. In our view, the trial court's admission of this evidence was not erroneous and does not provide a basis for reversal of Bock's conviction.

■ Our view of the propriety of the trial court's limited consideration of the preliminary breath test evidence also dictates our disposition of the second of Bock's contentions on appeal: she claims that the prosecution failed to complete its impeachment and improperly raised unsubstantiated insinuations in asking her about the "point one five" result of the preliminary test and then failing to subsequently offer proof that this number accurately reflected her blood-alcohol level. As noted previously, the preliminary breath test evidence was not admitted to prove Bock's level of intoxication and was not presented in the prosecution's case in chief; rather, the evidence was admitted to contradict Bock's testimony that her disagreement with the arresting officers resulted from their insistence on an unreasonably difficult sobriety test and their refusal to offer any other test. The questions presented to Bock on cross-examination served only to confirm the existence of details of the offering of an additional test, and we believe that this cross-examination required perfection only by the mere showing that a breath test had been administered at the arrest scene. This

showing was made by the rebuttal testimony of Drews; by admitting that he had not been informed of the result of the test, Drews' testimony further demonstrated that the purpose of admitting evidence of the test was to show its administration, not to show that its outcome proved Bock's intoxication. We find no error in the absence of evidence to confirm the test result number Bock was asked about.

## 2. Ineffective Assistance of Counsel

■ Bock also argues that she was denied the effective assistance of counsel guaranteed her by the United States and Illinois Constitutions when her trial counsel failed to present expert testimony that her condition at the time of her arrest was caused by her prescription medications rather than alcohol intoxication. Claims of ineffective assistance of counsel mandate reversal of a conviction only if a defendant demonstrates both that his counsel's performance was unreasonably deficient and a reasonable likelihood that but for the deficient performance, the outcome of his trial would have been different. *People v. Albanese*, 104 Ill. 2d 504, 524-26 (1984).

Bock cites the Physician's Desk Reference as support for her assertion that the prescription medications she was taking at the time of her arrest were responsible for her condition and argues that her counsel was deficient in failing to present expert testimony to establish that fact. However, the record does not suggest the existence of any evidence to support Bock's claims regarding the impact of her medication or that any such evidence was presented to the trial court. Matters outside the record that demonstrate counsel deficiencies are not properly presented for review on direct appeal. *People v. Woolley*, 178 Ill. 2d 175, 203-04 (1997). We accordingly decline to review Bock's claim that her counsel should have presented expert testimony on the effects of the prescription drugs she took.

Bock does raise an ineffective assistance claim whose basis is contained in the record: that her counsel was deficient in eliciting testimony from Drews that he did not ask her about her medication status and did not think she was taking medication. We find this claim to be without merit. Since Drews' testimony on the subject effectively conceded that he did nothing to investigate or eliminate the possibility that Bock's condition was caused by medication rather than alcohol, we believe that the questioning by Bock's counsel on the issue can be fairly construed to have been a reasonable trial tactic. In addition, we find no suggestion in the record that Drews' two brief answers to the medication questions played any part in the trial court's determina-

tion of Bock's guilt and cannot conclude that the outcome of her trial would have been different had the questions not been asked.

### 3. Civil Penalties for Breathalyzer Refusal

■ Bock next contends that she was unfairly prejudiced by the trial court's allowance of a cross-examination question about whether she had been told "what would happen to [her] license" if she refused a Breathalyzer test at the police station.

We believe that this issue has been waived. In objecting to the cross-examination at trial, Bock's counsel argued that the question was beyond the scope of direct examination, not that the issue of civil penalties for refusal of the Breathalyzer was substantively barred. General objections that do not inform the trial court of the basis for the claims of error made on appeal do not preserve the unspecified claims for review. *People v. Williams*, 165 Ill. 2d 51, 60-61 (1995). In addition, Bock's written posttrial motion did not claim error in the trial court's permission of the question regarding the effect of her test refusal on her driver's license. Failure to include a claim of error in a written posttrial motion also waives an issue for purposes of appellate review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

Bock cites *City of Rockford v. Elliott*, 308 Ill. App. 3d 735 (1999), for the proposition that testimony regarding the civil penalties faced by a defendant for refusal of a breath test requires reversal of the defendant's conviction. In our view, her reliance on *Elliott* is misplaced. There, in a DUI jury trial, the prosecution elicited police testimony that the defendant had been warned that the driver's license suspension consequences would be twice as severe for refusing to take a breath test as they would have been for taking the test and failing. 308 Ill. App. 3d at 737. The appellate court for the Second District determined that the trial court had neglected to weigh the probative value of such evidence against the prejudicial effect of its admission and concluded that the evidence should have been excluded because the prejudice outweighed its value.

In the instant case, however, the fact finder was the trial court, not a jury, and the evidence elicited regarding the consequence of a breath test refusal consisted only of the fact that Bock had been warned of an impact on her license and did not include mention of what that impact was. We believe that these distinctions significantly lessen the possibility that Bock's verdict was the product of the prejudice identified by the *Elliott* court.

In addition, we depart from the *Elliott* court's apparent conclusion that the statutory provision allowing admission into evidence of a

driver's breath test refusal in any civil or criminal proceeding for acts relating to intoxicated driving (625 ILCS 5/11—501.2(c)(1) (West 2000)) precludes admission of the fact that a defendant had been advised of the civil consequences of refusing the test. The statute provides that "evidence of refusal shall be admissible"; in our view, the *Elliott* court's discussion of the statutory language would be persuasive if the statute instead provided that "only the fact of a driver's refusal shall be admissible." We find no support in the language of the statute for the conclusion that the circumstances surrounding a driver's breath test refusal may not be admitted into evidence.

In summary, we believe that Bock waived this issue on appeal and that, even if the issue were considered to have been properly preserved, she has presented no basis for reversal of her conviction.

### 4. Sufficiency of the Evidence

Bock contends that she was not proved guilty of driving while under the influence of alcohol beyond a reasonable doubt. Given the testimony of the arresting officers regarding her driving, the odor of alcohol on her breath, her glassy, bloodshot eyes, her unsteady gait, her failure of two sobriety tests, and her own admission of the consumption of at least some alcohol, we cannot say that the evidence, viewed most favorably to the prosecution, was so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of her guilt. *People v. Long*, 316 Ill. App. 3d 919, 926 (2000).

### CONCLUSION

For the foregoing reasons, we affirm Candace Bock's conviction for driving under the influence of alcohol and the sentence imposed thereon.

Affirmed.

FITZGERALD SMITH, P.J., and TULLY, J., concur.