NO. 4-03-0029 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

          v.

RICHARD J. DEA,

          Defendant-Appellant.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Logan County

No. 01DT58  

Honorable

Donald A. Behle,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

A jury convicted defendant, Richard J. Dea, of driving under the influence of alcohol (DUI) in violation of section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2000)).  He appeals his conviction, claiming the trial court committed reversible error when it allowed evidence that he faced greater penalties for refusing the Breathalyzer test than for taking and failing it.  We affirm.

I. BACKGROUND

According to the evidence presented at trial, at 10:40 p.m. on May 11, 2001, Mt. Pulaski police officer Jeremy Roberts stopped defendant for speeding.  Officer Roberts approached defendant at the driver's side of the vehicle and noticed he smelled strongly of alcohol.  Defendant said he had two beers that evening and gave Officer Roberts permission to conduct field-sobriety tests.  The officer administered the horizontal gaze nystagmus, the turn-and-walk, and the one-legged-stand tests.  According to the officer, defendant failed all three.  Officer Roberts placed defendant under arrest and transported him to the Logan County jail.

At the jail, the officer took defendant to the­ "Breath­alyzer room" and read to him the warning to motorist.  At defendant's trial, the prosecutor asked Officer Roberts to testify to the content of the warning whereby the following exchange occurred:

"Q. Can you tell the members of the jury without really worrying about what the length of time is here, are the penalties for a driver[']s license suspension greater if you don't blow than if you blow?

A. Yes."

After the officer read to defendant the warning to motorist, he asked defendant to submit to the Breathalyzer test, and defendant refused.  When cross-examining defendant, the prosecutor asked:

"Q. Okay.  At any rate you yourself was [
sic
] asked to take a breath test?

A. Right.

Q. And you refused, correct, and you told Mr. Markwell [defense attorney] that since you already had the ticket and it wasn't going to change anything that it didn't matter whether you took the breath test or not?

A. Correct.

Q. That is not true, is it?

A. What do you mean?

Q. In fact, if you don't take the breath test, it changes the length of your suspension?

A. It doesn't change whether I'm going to be getting the ticket.

Q. The [w]arning to [m]otorist that you were read that you ignored does warn you of the consequences of taking a test and failing and not taking a test, correct?

A. Yes."            

In his rebuttal closing argument, the prosecutor said:

"[B]ut there is one thing that could have settled this whole matter and one thing and only person in this room who knows what that result would have been.  It would have been to take a breath test.  A breath test after being warned pursuant to the [w]arning to [m]otorist that, on the one hand, if you take a breath test and you flunk, your suspension is going to be this amount of time, and on the other hand, if you don't take a breath test, your suspension is this amount of time.  That is what the testimony is, ladies and gentlemen.  That defendant knew what that [w]arning to [m]otorist was, and yet what did he do?  He refused the breath test."

The jury found defendant guilty of DUI.  Without raising the issue presented here, defendant filed a posttrial motion claiming the evidence did not support the jury's verdict.  The trial court denied the motion and sentenced defendant to a 12-month term of conditional discharge, 30 days in the county jail, attendance at a victim-impact panel, submission to an alcohol evaluation, and payment of a fine and court costs.  This appeal followed.

II. ANALYSIS

For the first time on appeal, defendant argues the trial court impermissibly admitted evidence of the civil penalties defendant faced for refusing to submit to the Breathalyzer test.  And, he claims, the State compounded the error by again referring to the penalties in its rebuttal argument.  Citing the Second District's opinion in 
City of Rockford v. Elliott
, 308 Ill. App. 3d 735, 721 N.E.2d 715 (1999), defendant contends his conviction must be reversed.

Defendant's trial counsel failed to object to the admission of the evidence (1) on direct examination of Officer Roberts, (2) on cross-examination of defendant, (3) during the State's rebuttal argument, and (4) in a posttrial motion.  Now, on appeal, defendant claims the evidence was inadmissible.  The failure to raise an issue in a written motion for a new trial results in the forfeiture of that issue on appeal.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988).  To preserve an issue on appeal, a defendant must object to the purported error at trial and include it in his written posttrial motion.  
Enoch
, 122 Ill. 2d at 186, 522 N.E.2d at 1130.  Defendant acknowledges his trial counsel's procedural error but claims we should review the matter under the plain-error doctrine because the evidence presented at trial was closely balanced.  See 
Enoch
, 122 Ill. 2d at 199, 522 N.E.2d at 1136 (review is permissible if the error affects a substantial right or if the evidence is closely balanced).  We disagree that the evidence here was closely balanced and decline to find plain error occurred.

"We are not triers of fact.  Our function is to serve as a court of review."  
People v. Basler
, 193 Ill. 2d 545, 549, 740 N.E.2d 1, 3 (2000).  Because (1) the trial court did not have the opportunity to consider the issue (
Soto v. Gaytan
, 313 Ill. App. 3d 137, 140, 728 N.E.2d 1126, 1128 (2000))
, (2) the admissibility of evidence should not be initially determined by a court of review (see 
Basler
, 193 Ill. 2d at 549, 740 N.E.2d at 3), and (3) defendant does not raise an ineffective assistance-of-counsel argument, we decline to excuse defendant's procedural error and find the issue forfeited.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, J., concurs.

STEIGMANN, J., specially concurs.

JUSTICE STEIGMANN, specially concurring:

Because defendant did not raise at the trial level the issue that the trial court improperly admitted evidence of the civil penalties he faced for refusing to submit to the Breathalyzer test, the majority correctly concludes that he has forfeited this argument on appeal.  I write separately to point out that the Second District Appellate Court's decision in 
Elliott
, 308 Ill. App. 3d 735, 721 N.E.2d 715, which defendant cites in support of his argument on appeal, is wrongly decided and should not be followed.  

The 
Elliott
 court was presented with the same issue defendant raises here.  In that case, the defendant argued that the trial court impermissibly admitted evidence that the defendant knew the civil penalties he would face for refusing to submit to a Breathalyzer test.  The State replied that the evidence was admissible because (1) the defendant's knowledge of the consequences of refusing to take the breath test was circumstantial evidence of consciousness of guilt and (2) such consciousness of guilt was both relevant and probative.  Although the appellate court appropriately 
discussed the general rules governing relevancy--including that a trial court's determination of whether evidence is relevant and admissible will not be reversed absent a clear abuse of discretion resulting in manifest prejudice to the defendant--the 
Elliott
 court went "off the tracks" when it wrote the following: 

"We would agree that being advised as to the civil penalties the defendant faced if he refused to submit to the breath test is of some probative value, in light of the fact that the defendant's refusal to take the breath test was already admitted into evidence.  However, it is 
our
 
opinion
 that the prejudice to the defendant by the admission of evidence of the civil penalties for refusal to submit to a breath test outweighs the probative value of such evidence.  While we are reluctant to overturn a trial court's ruling on the admission of evidence, it is clear from the trial court's remarks in this case that it admitted the evidence based upon relevancy but failed to weigh the relevance of this evidence against its prejudicial effect on the defendant.  Therefore, we conclude that the trial court abused its discretion in admitting the evidence of the civil penalties the defendant faced for refusing to submit to the breath test and that such an abuse of discretion resulted in manifest prejudice to the defendant."  (Emphasis added.)  
Elliott
, 308 Ill. App. 3d at 739-40, 721 N.E.2d at 718-19.  

As the above quote rather candidly concedes, the appellate court did not like the trial court's ruling and, substituting its discretion for that of the trial court, decided that the prejudicial effect of this evidence outweighed its probative value.  This decision is clearly wrong, and we should identify it as such and emphatically reject it.  

As this court explained in 
People v. Garriott
, 253 Ill. App. 3d 1048, 1052, 625 N.E.2d 780, 784 (1993), a driver's refusal to take a breath test is relevant because it implies that he believes he is intoxicated, something that he is clearly in a prime position to appraise.  (Interestingly, the 
Elliott
 court even cites the 
Garriott
 holding approvingly.  
Elliott
, 308 Ill. App. 3d at 739, 721 N.E.2d at 718.)  If a driver's refusal to take a breath test is relevant because it implies that he believes he is intoxicated, why would it not logically follow that the jury should be informed of the same factors that defendant considered--namely, the civil penalties that would result from his refusal--when he decided to refuse the test?  A reasonable inference under these circumstances is that defendant was so afraid that the breath test would show he was intoxicated that he adhered to his refusal to take it 
despite
 having been informed of the severe civil penalties that would follow.  The obverse of this situation would be one where defendant was not informed of any civil penalties for his refusal to take a breath test and then testified at trial that, "I decided to refuse to take the breath test because I just don't like that process.  But I had no idea that the civil penalties for such a refusal would be so severe.  If I had known that, I would have taken the test."  

Aside from this additional probative value, evidence that a defendant refused to take a breath test after being informed of civil penalties possesses no countervailing prejudicial effect.  Although the 
Elliott
 court opined that the prejudice of such evidence outweighs the probative value, it never explained what that prejudice was.  Instead, it is almost as if the 
Elliott
 court was concerned that the prosecutor was just not "playing fair" by presenting such strong evidence.  

Typically, when one speaks of the "prejudicial effect" of certain evidence (or, as Federal Rule of Evidence 403 describes it, "the danger of unfair prejudice" (Fed. R. Evid. 403)), that means that the evidence in question will somehow cast a negative light upon the defendant for reasons that have nothing to do with the case on trial.  Examples of the kinds of evidence that possess such "prejudicial effects" include (1) a defendant's gang activities or gang membership, (2) a defendant's possession of a gun, (3) a defendant's threat to harm (or his actually harming) some third party, or (4) defendant's commission of other crimes.  

Normally, none of the foregoing would be admissible at a defendant's trial because each would be viewed as harmful to the defendant in the eyes of the trier of fact--that is, the evidence has a "prejudicial effect."  However, in proper circumstances, the otherwise inadmissible evidence described in each of the foregoing examples would be admissible if the trial court concluded that the prejudicial effect of such evidence did not substantially overcome its probative value.  Contrary to the questionable analysis of the 
Elliott
 court, a trial court need not engage in this balancing process 
until
 it determines that otherwise relevant evidence has some prejudicial effect about which to be concerned.  If that relevant evidence possesses no prejudicial effect, then the court should admit it unless the court otherwise determines that it is unnecessarily cumulative.  

In this regard, Illinois law is very similar to Federal Rule of Evidence 403, as explained by our distinguished colleague, Justice Warren D. Wolfson, of the First District Appellate Court: 

"Once the weighing process is begun, there is no simple right or wrong answer [regarding the admissibility of relevant evidence].  The judge is open to persuasion.  Everyone involved in the decision will visualize a balancing scale.  That scale, however, is not evenly balanced.  It starts out tipped toward admissibility because there is presumptive admissibility of probative evidence under [Federal Rules of Evidence] 403.  The opponent of the evidence bears the burden of tipping the scale toward exclusion."  T. Mauet & W. Wolfson, Trial Evidence 5 (1997). 

See also 
People v. Johnson
, 208 Ill. 2d 53, 102, 803 N.E.2d 405, 433 (2003) (evidence of a defendant's gang affiliation "may be admitted so long as it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect").  In 
People v. Lewis
, 165 Ill. 2d 305, 329, 651 N.E.2d 72, 83 (1995), the supreme court wrote the following:

"[E]ven when evidence is relevant, it may, in the trial court's discretion, be excluded if its prejudicial effect substantially outweighs its probative value. [Citation.] In this context, prejudice means '"an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror."' [Citations.]"

The 
Elliott
 court is simply mistaken when it assumes that a trial court must constantly be asking itself, as it decides whether offered evidence is relevant, whether the prejudicial effect of the evidence substantially overcomes its probative value.  Given that the great majority of evidence typically offered at trial contains no prejudicial effect, trial courts should be allowed to await an objection by the opposing party on the ground of the evidence's prejudicial effect before being called upon to make a ruling.