THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICK J. LYNN, Defendant-Appellant.

Fourth District    No. 4—07—0923

Opinion filed February 27, 2009.—Rehearing denied March 20, 2009.

Michael J. Pelletier, Charles M. Schiedel, and Allen H. Andrews, all of State Appellate Defender's Office, of Springfield, for appellant.

John F. Dahlem, State's Attorney, of Virginia (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 2007, a jury convicted defendant, Rick J. Lynn, of aggravated driving under the influence of alcohol (aggravated DUI) (625 ILCS 5/11—501(d)(1)(A) (West 2006)). The trial court later sentenced defendant to 18 months in prison.

Defendant appeals, arguing that the trial court erred by admitting (1) evidence of the civil penalties imposed for refusing to submit to a Breathalyzer test and (2) irrelevant evidence. We affirm.

## I. BACKGROUND

In March 2007, the State charged defendant with (1) aggravated DUI in that defendant drove a vehicle under the influence of alcohol after he had been convicted of DUI on three previous occasions (625 ILCS 5/11—501(d)(1)(A) (West 2006)) (No. 07—DT—9), and (2) possession of a controlled substance (1 gram or more but less than 15 grams of a substance containing cocaine) (720 ILCS 570/401(c)(2) (West 2006)) (No. 07—CF—39).

A summary of the pertinent evidence presented during defendant's September 2007 jury trial showed the following. (Because the jury did

not convict defendant of possession of a controlled substance, the evidence presented regarding this charge has been omitted.)

Cass County sheriff's deputy John Osmer testified that on March 4, 2007, at approximately 9:15 p.m., he observed a truck with two occupants repeatedly cross the fog line (the white reflective line located on the right shoulder of a highway). Osmer activated his emergency lights and followed the truck for approximately one mile before it eventually stopped. As Osmer spoke to the driver, whom he identified as defendant, he (1) immediately smelled the strong odor of alcohol coming from defendant's breath and (2) noticed that defendant's eyes were "glassy and bloodshot." When Osmer asked defendant whether he had consumed any alcohol, he replied that he had had "a couple of beers." Osmer then asked defendant to accompany him to his patrol car where he again asked defendant how much alcohol he had consumed. Defendant replied that he had had "two or three" beers. Defendant later told Osmer that he had stopped drinking 30 minutes before the traffic stop.

After obtaining defendant's consent, Osmer administered a series of field sobriety tests to determine whether defendant had been driving impaired. During defendant's attempt to perform the walk-and-turn test, Osmer noted five attributes that indicated impairment. In addition, Osmer characterized defendant's performance on the one-legged-stand test as "extremely poor," in that defendant could not maintain his balance for more than one second without putting his raised foot on the ground or using his arms for support. Osmer stated that during defendant's attempts to perform the field sobriety tests, the weather was cold with minimal wind. (A videotape of defendant's field sobriety test was shown to the jury.)

After conducting the field sobriety tests, Osmer asked defendant if he would consent to a preliminary breath test, which defendant reluctantly agreed to perform. Osmer told defendant to place his lips around the hollow tube protruding from the hand-held device and blow firmly and steadily. Defendant placed his lips on the tube and "puffed out his cheeks." However, Osmer opined that defendant did not properly exhale, which resulted in an (1) insufficient breath sample and (2) inaccurate blood-alcohol-concentration (BAC) result. Defendant's preliminary breath test produced a BAC of 0.05. After defendant refused to provide a second preliminary-breath-test sample, Osmer placed him under arrest for aggravated DUI. A subsequent search of defendant's truck revealed a cooler that contained eight beer bottles.

Osmer transported defendant to the sheriff's department, where he read defendant the "warning to motorist" pursuant to section 11—501.1(c) of the Illinois Vehicle Code (625 ILCS 5/11—501.1(c) (West

2006)). The warning informed defendant, in pertinent part, that if he refused or failed to complete any chemical tests to determine his BAC, his driver's license would be suspended for at least six months, if a first offender, or at least three years, if a repeat offender. Over defendant's objection, Osmer stated that after he provided defendant a copy of the warning and asked him if he would submit to a Breathalyzer test, defendant refused. Osmer again asked defendant how many beers he had consumed that day, and he responded that he had had "three or four." When Osmer asked defendant where he had consumed the beers, defendant responded that he had "two at his residence, two at the East Side [Tavern], and two with friends." Over defendant's objection, the trial court admitted into evidence the written warning to motorist Osmer read to defendant, which contained the aforementioned penalties for refusing to submit to a Breathalyzer test.

Defendant testified that on March 4, 2007, he was traveling to his home with his girlfriend, Stephanie Kelso-Darnell, when Osmer stopped him. Defendant admitted that he probably crossed the fog line twice but stated he did so because he was consoling Kelso-Darnell, who was upset. Defendant (1) opined that he was in control of his truck and (2) characterized his performance on the field sobriety tests as "fine" but noted that the wind affected his ability to raise his leg and move side-to-side.

Defendant admitted that although he could not remember if Osmer read him the warning to motorist, Osmer had informed him that his driver's license would be suspended for six months if he refused to submit to a Breathalyzer test. Defendant responded to Osmer's request to submit to a Breathalyzer test after his arrest by stating that he had already provided him a sample during the preliminary breath test. Defendant denied that he refused to submit to a Breathalyzer test after his arrest because it would have confirmed he was impaired.

Kelso-Darnell testified that on March 4, 2007, she spent the afternoon and evening with defendant. Kelso-Darnell stated that (1) although she saw defendant drinking beer, she did not know how many he had consumed and (2) she had consumed 8 to 10 beers during that afternoon. Kelso-Darnell explained that, while driving home, defendant attempted to console her because she was upset. Kelso-Darnell also stated that before the traffic stop, (1) the weather was cold with 30-mile-per-hour winds, (2) defendant's driving was not unusual, (3) she did not notice defendant's truck swerving, and (4) defendant did not appear intoxicated. Kelso-Darnell opined that defendant's condition allowed him to operate his truck safely.

During closing arguments, the prosecutor argued, in pertinent part, as follows:

"So at the police station[,] *** defendant is [given] a warning to motorist and offered an opportunity to take a [B]reathalyzer test. The evidence was that *** if he refused to take a [B]reathalyzer test, he would be given a six months driver's license suspension just for that refusal. That's the law in Illinois. *** [D]efendant refused to take that test. You can ask yourself[, 'W]hy not take that test if you are not under the influence of alcohol?['] I think there is only one reason[: B]ecause you are under the influence of alcohol.

*** So the officer, after taking [defendant] out of the squad car, taking him into the sheriff's department, *** defendant has a chance to take a [B]reathalyzer test. Refuses to take a [B]reathalyzer test that would show the amount of alcohol in his breath and instead takes a six[-]month driver's license suspension."

During the prosecutor's rebuttal closing argument, he also argued the following:

"So why then does the officer *** take [defendant] to the police station and ask him to take another test. *** The law requires that *** defendant be given a warning to motorist and offered a [B]reathalyzer test[,] and I can't hammer this enough, if you are not impaired, you are not under the influence of alcohol, why not take that [B]reathalyzer test[?] Why would you take a six[-]month suspension of your driver's license rather than take a [B]reathalyzer test if you are not under the influence of alcohol[,] and the reason was because [defendant] was under the influence of alcohol."

On this evidence, the jury convicted defendant of aggravated DUI (625 ILCS 5/11—501(d)(1)(A) (West 2006)). As previously stated, the jury acquitted defendant of possession of a controlled substance (1 gram or more but less than 15 grams of a substance containing cocaine) (720 ILCS 570/401(c)(2) (West 2006)). In October 2007, the trial court sentenced defendant to 18 months in prison.

This appeal followed.

## II. DEFENDANT'S CLAIM THAT HIS CONVICTION FOR AGGRAVATED DUI SHOULD BE REVERSED

### A. Defendant's Refusal To Submit to a Breathalyzer Test

#### 1. *Admission of the Civil Penalties Imposed for Refusing To Submit to a Breathalyzer Test*

Defendant argues that the trial court erred by admitting evidence of the civil penalties imposed for refusing to submit to a Breathalyzer test. We disagree.

"It is well established that trial courts possess discretion in determining the admissibility of evidence, and a reviewing court may

overturn a trial court's decision only when the record clearly demonstrates the court abused its discretion." *People v. Harris*, 231 Ill. 2d 582, 588 (2008). " ' "Abuse of discretion" means clearly against logic; the question is not whether the appellate court agrees with the [trial] court, but whether the [trial] court acted arbitrarily, without employing conscientious judgment,' " or whether, considering all the circumstances, the court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice. *Long v. Mathew*, 336 Ill. App. 3d 595, 600, 783 N.E.2d 1076, 1080 (2003), quoting *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094, 1096 (2000).

In support of his argument, defendant relies on *City of Rockford v. Elliott*, 308 Ill. App. 3d 735, 721 N.E.2d 715 (1999). In *Elliott*, the Second District addressed the same issue defendant now raises— namely, whether the trial court abused its discretion by "permitting the State to present evidence of the civil penalties imposed upon a motorist as a result of refusing the breath test following an arrest for [DUI]." *Elliott*, 308 Ill. App. 3d at 737, 721 N.E.2d at 716. In reversing the defendant's conviction and remanding for a new trial, the Second District concluded that such evidence (1) while having some probative value, was substantially outweighed by its prejudicial effect to the defendant and (2) was an inappropriate expansion of section 11— 501.2(c)(1) of the Code (625 ILCS 5/11—501.2(c)(1) (West 1996)), which provides only for the admission of evidence of a defendant's refusal to submit to a Breathalyzer test. *Elliott*, 308 Ill. App. 3d at 738-40, 721 N.E.2d at 718-19. We emphatically decline to follow *Elliott*.

Instead, we conclude that the prejudicial effect of admitting evidence regarding the civil penalties imposed for refusing to submit to a Breathalyzer test does not substantively outweigh its probative value, based on the following rationale:

"As [the Fourth District Appellate C]ourt explained in *People v. Garriott*, 253 Ill. App. 3d 1048, 1052, 625 N.E.2d 780, 784 (1993), a driver's refusal to take a breath test is relevant because it implies that he believes he is intoxicated, something that he is clearly in a prime position to appraise. *** If a driver's refusal to take a breath test is relevant because it implies that he believes he is intoxicated, why would it not logically follow that the jury should be informed of the same factors that defendant considered—namely, the civil penalties that would result from his refusal—when he decided to refuse the test? A reasonable inference under these circumstances is that defendant was so afraid that the breath test would show he was intoxicated that he adhered to his refusal to take it *despite*

having been informed of the severe civil penalties that would follow. \*\*\*

Aside from this additional probative value, evidence that a defendant refused to take a breath test after being informed of civil penalties possesses no countervailing prejudicial effect. Although the *Elliott* court opined that the prejudice of such evidence outweighs the probative value, it never explained what that prejudice was." (Emphasis in original.) *People v. Dea*, 353 Ill. App. 3d 898, 902-03, 819 N.E.2d 1175, 1179 (2004) (Steigmann, J., specially concurring).

Typically, the prejudicial effect of certain evidence "means that the evidence in question will somehow cast a negative light upon the defendant for reasons that have nothing to do with the case on trial." *Dea*, 353 Ill. App. 3d at 903, 819 N.E.2d at 1179 (Steigmann, J., specially concurring); see *People v. Lewis*, 165 Ill. 2d 305, 329, 651 N.E.2d 72, 83 (1995) (in this context, prejudice means to decide on an improper basis, such as sympathy, hatred, contempt, or horror).

■ In this case, defendant fails to specify how he was prejudiced by the admission of such evidence other than to rely on the *Elliott* court's conclusion that such evidence was prejudicial. Thus, because (1) defendant bases his argument solely on *Elliott*, which we decline to follow, and (2) the record fails to show such prejudice, we reject defendant's assertion that the trial court erred by admitting evidence of the civil penalties imposed for refusing to submit to a Breathalyzer test.

Moreover, to the extent defendant contends that section 11—501.2(c)(1) of the Code (625 ILCS 5/11—501.2(c)(1) (West 2006)) precludes admission of evidence showing that he had been advised of the civil penalties for refusing a Breathalyzer test, we agree with the First District's departure from *Elliott* in that regard. See *People v. Bock*, 357 Ill. App. 3d 160, 170-71, 827 N.E.2d 1089, 1097-98 (2005) (declining to follow *Elliott* because it found no statutory support for the conclusion that the circumstances surrounding a driver's Breathalyzer test refusal is inadmissible).

### 2. Defendant's Claim That He Had a Right To Refuse To Submit to a Breathalyzer Test

During the State's direct examination of Osmer, the following exchange took place:

"[PROSECUTOR:] After you read that warning to motorist to the defendant, did you ask him to provide you with an analysis of the alcohol in his breath through a [B]reathalyzer test?

[DEFENSE COUNSEL:] Your Honor, I object[.] \*\*\* This is not relevant to the trial. [Defendant] has exercised his constitutional rights.

THE COURT: Overruled."

On redirect, defendant again objected on the same grounds to the State's inquiry regarding defendant's refusal to submit to a Breathalyzer test after Osmer read him the warning to motorist. On re-cross, the following exchange took place:

"[DEFENSE COUNSEL:] The warning[s] to motorist are required to be given by law, are they not?

[OSMER:] Yes, sir.

[DEFENSE COUNSEL:] And do you quarrel with a person exercising his rights that are given to him under that document?

[OSMER:] Can you clarify that please?

[DEFENSE COUNSEL:] Do you take offense when a person says I am going to exercise whatever rights I am given by statute[;] you don't get mad do you?

[OSMER:] It's their choice.

[DEFENSE COUNSEL:] That's correct. It's his choice."

We first note that a person arrested for DUI has no constitutional right to refuse to submit to a Breathalyzer test. *People v. Johnson*, 218 Ill. 2d 125, 140, 842 N.E.2d 714, 723 (2005); *People v. Wegielnik*, 152 Ill. 2d 418, 427-28, 605 N.E.2d 487, 491 (1992); *People v. Rolfingsmeyer*, 101 Ill. 2d 137, 142, 461 N.E.2d 410, 412 (1984). In addition, since 1986, our legislature has eliminated any circumstance in which a person arrested for DUI has any statutory right to refuse to submit to a Breathalyzer test. *People v. Jones*, 214 Ill. 2d 187, 198, 824 N.E.2d 239, 245 (2005).

■ Defendant's objections and cross-examination of Osmer imply that because section 11—501.1(c) of the Code (625 ILCS 5/11—501.1(c) (West 2006)) requires the police to provide him (defendant) a warning if he "refuses" to comply with a request to submit to a Breathalyzer test, he has a statutory right to refuse. However, this argument is devoid of merit, given that section 11—501.1(c) of the Code does not confer any additional rights on a defendant. Instead, section 11—501.1(c) merely outlines the statutory consequences imposed on a person who is arrested for DUI if that person refuses to submit to a Breathalyzer test. (See also *Jones*, 214 Ill. 2d at 199-200, 824 N.E.2d at 246, holding that section 11—501.2(c)(2) of the Code (625 ILCS 5/11—501.2(c)(2) (West 2002)) similarly does not grant a DUI arrestee the right to refuse chemical testing.) Under defendant's theory, he would have a statutory right to commit theft simply because our legislature has enacted laws which inform him of the penalties for doing so. Or that he has a statutory right not to file his state income-tax return because the legislature has provided a penalty for that failure.

## B. Defendant's Claim That the Trial Court Erred
## by Admitting Irrelevant Evidence

■ Defendant also argues that the trial court erred by admitting irrelevant evidence. Specifically, defendant contends that the court improperly admitted evidence that the arresting officer did not routinely arrest everyone he stopped. We disagree.

### 1. *Standard of Review*

"Evidence is relevant when it tends to prove a fact in controversy or render a matter in issue more or less probable." *Jones v. Rallos*, 384 Ill. App. 3d 73, 92, 890 N.E.2d 1190, 1207 (2008). "There is no question that a defendant can open the door to the admission of evidence that, under ordinary circumstances, would be inadmissible." *Harris*, 231 Ill. 2d at 588. "The determination as to whether evidence is relevant and admissible is within the sound discretion of the trial court, and its ruling will not be reversed absent a clear abuse of discretion resulting in manifest prejudice to the defendant." *People v. Bui*, 381 Ill. App. 3d 397, 422, 885 N.E.2d 506, 528 (2008).

### 2. *The Pertinent Evidence Presented at Trial*

During defendant's jury trial, the following colloquy occurred during the State's direct examination of Osmer:

"[PROSECUTOR:] Now, in your capacity as a police officer, have you stopped many people for suspected [DUI]?

[DEFENSE COUNSEL]: Objection, not relevant.

THE COURT: Overruled.

[PROSECUTOR]: You may answer.

[OSMER:] Yes, sir.

[PROSECUTOR:] Did you arrest them all for [DUI]?

[DEFENSE COUNSEL]: Objection, not relevant.

THE COURT: Sustained.

[PROSECUTOR]: In your opinion as an experienced police officer, was this defendant under the influence of alcohol?

[OSMER:] Yes, sir."

After the defense rested its case, the State recalled Osmer to testify to the weather on the night of March 4, 2007. The following dialogue occurred during defendant's cross-examination:

"[DEFENSE COUNSEL:] [Defendant's arrest] happened in March?

[OSMER:] Yes, sir.

[DEFENSE COUNSEL:] And you are testifying here *** yesterday and today, that's April, May, June, and July, August, September. How many arrests, stops—strike that. How many stops have you made since this stop here? Lots?

[OSMER:] Yeah, sure."

On redirect examination, the following colloquy occurred:

"[PROSECUTOR:] Did all those stops result in arrests?

[OSMER:] No sir.

[DEFENSE COUNSEL]: I didn't ask about arrests, Your Honor, I object.

THE COURT: [Are] [y]ou saying it goes beyond the scope of your cross?

[DEFENSE COUNSEL]: That's correct.

THE COURT: Overruled.

[DEFENSE COUNSEL]: It's inadmissible and it's not relevant as to how many arrests this officer made between because he is going to ask about the [DUI] and, frankly, Your Honor, I only asked the question as to how many stops he made to test his recollection and remember what was occurring.

THE COURT: I understand why you asked it. I think the [S]tate's [A]ttorney should be allowed to make that—at least that additional inquiry. Overruled.

[PROSECUTOR]: And do all the stops you make result in arrests?

[OSMER:] No, sir."

During closing arguments, the State argued, in pertinent part, as follows:

"And the defendant refused field sobriety tests, so if [Kelso-Darnell] doesn't know how drunk he was, how much he had to drink, there [are] only two people that could know. The arresting officer who was trained, makes traffic stops, doesn't always arrest everybody as he testified, but makes stops, checks people out and under trained observation, this defendant was under the influence of alcohol. So he would know[,] and the only other person that would know is the defendant. And the defendant knew enough, knew how intoxicated he was not to take that [B]reathalyzer test that would have showed the alcohol content in his breath. Now, the defendant said he didn't do it."

### 3. *The Testimony Regarding the Number of Arrests*

Generally, testimony solicited on direct examination regarding the number of arrests a police officer has made since a defendant's arrest for DUI is irrelevant and, therefore, inadmissible because it would not tend to (1) prove that a defendant was driving under the influence or (2) render an issue in that regard more or less probable. See *People v. Thomas*, 199 Ill. App. 3d 79, 99, 556 N.E.2d 1246, 1259 (1990) (generally, police testimony regarding how many other defendants took and failed Breathalyzer test is inadmissible). However, in this case, the record reveals that this specific testimony was elicited only after defense counsel opened the door when he cross-examined Osmer

regarding the number of stops he had made since defendant's arrest. Defense counsel asked how many stops Osmer had made to "test" or, rather, call into question Osmer's ability to recall the details of defendant's stop and subsequent arrest. Having done so, defendant cannot now complain that the trial court erred by admitting evidence that narrowed the number of stops which Osmer would need to remember to be able to recall the weather conditions on the night of defendant's arrest. See *Harris*, 231 Ill. 2d at 588 (because defendant testified that he did not commit crimes, he could not later complain about rebuttal evidence regarding his prior juvenile adjudication of delinquency).

Moreover, even if we were to accept defendant's argument, which we do not, the admission of irrelevant evidence is harmless error if no reasonable probability exists that the verdict would have been different had the irrelevant evidence been excluded. *People v. Bartee*, 351 Ill. App. 3d 472, 481, 814 N.E.2d 238, 245 (2004).

Here, the evidence against defendant was overwhelming. The jury (1) saw the videotape showing defendant's attempt to perform the field sobriety tests, (2) heard testimony regarding how many alcoholic beverages defendant had consumed, (3) considered Osmer's testimony regarding defendant's intoxication and impairment, and (4) was able to judge defendant's credibility when he testified in his own defense.

Accordingly, we reject defendant's argument that the trial court erred by admitting the evidence in question.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.