# Illinois Official Reports

## Appellate Court

---

**People v. Romanowski, 2016 IL App (1st) 142360**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WESTON ROMANOWSKI, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-14-2360 |
| Filed | August 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-14429; the Hon. Thomas V. Gainer, Jr., Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Katie Anderson, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Czarina Powell, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a jury trial, defendant, Weston Romanowski, was convicted of aggravated driving while under the influence of alcohol and sentenced to 18 months in prison and 1 year of mandatory supervised release. In this direct appeal, Mr. Romanowski contends that his conviction should be reversed because the circuit court erroneously permitted the arresting officer to testify that Mr. Romanowski was told of the civil penalties that he would be subject to if he refused to submit to a blood-alcohol test. Mr. Romanowski also contends that the circuit court's order requiring him to pay a public defender fee in the amount of $450 should be vacated, because no hearing was held concerning his ability to pay such a fee. For the reasons that follow, we affirm Mr. Romanowski's conviction and sentence for aggravated driving while under the influence of alcohol and we vacate the $450 public defender fee.

¶ 2      BACKGROUND

¶ 3      A jury trial was held in this matter on June 10, 2014. The only witness who testified was the arresting officer, Officer John McGuire of the Chicago police department. Officer McGuire testified that, at approximately 8:30 p.m. on the evening of May 16, 2013, he encountered Mr. Romanowski's vehicle parked, with the engine running, at a tollbooth serving the northbound lanes of the Chicago Skyway. The vehicle was in a lane displaying a red "X," indicating that it was out of service. As he approached and began to question Mr. Romanowski, Officer McGuire smelled a strong odor of alcohol coming from the vehicle, observed Mr. Romanowski fumbling through the glove box, and could see three empty beer cans in the rear seat of the vehicle. Officer McGuire testified that Mr. Romanowski's speech was slurred and incoherent; he had bloodshot, glassy eyes; and he kept turning his face away from the officer when he was spoken to. Mr. Romanowski had to be told to step out of the vehicle four times and required assistance to do so.

¶ 4      Officer McGuire described three field sobriety tests that he was trained to administer and did administer to Mr. Romanowski, in a lighted area with level pavement just outside the toll booth: the horizontal gaze nystagmus (HGN) test, the walk and turn test, and the one-legged stand test. The HGN test, which focuses on the movement of the eyes in response to an external stimulus, is designed to detect signs that a subject has consumed alcohol. Officer McGuire explained how, when asked to track the movement of a light pen horizontally and at a 45 degree angle to his line of vision, Mr. Romanowski exhibited a "lack of smooth pursuit" or uncontrolled jerking of the eyes, a positive indicator for the consumption of alcohol. The walk and turn test, which requires a subject to count out and take nine heel-to-toe steps along a straight line, turn around, and take nine more heel-to-toe steps in the opposite direction, assesses a subject's ability to perform multiple tasks simultaneously. According to Officer McGuire, Mr. Romanowski took four steps that were not heel-to-toe steps and lost his balance on the fifth step, raising his arms for balance and stepping off the line before ending the test. The one-legged stand test, another test that gauges a subject's ability to perform tasks when his or her attention is divided, requires the subject to raise one foot 12 inches off of the ground and, while looking at the toe of the raised foot, count by saying "one 1,000, two 1,000, three 1,000, etc." Officer McGuire stated that, during the test, Mr. Romanowski's left ankle "was turning and wiggling," and he was able to raise his right leg for only four seconds before losing his balance and putting his foot down. Mr. Romanowski was given a single chance to perform

each test, and according to Officer McGuire, the results indicated that Mr. Romanowski had consumed alcohol and was impaired.

¶ 5 On cross-examination, Officer McGuire acknowledged that he had never met Mr. Romanowski before and was not familiar with what his normal speaking voice sounded like or whether his eyes were regularly bloodshot due to allergies or some other reason. He admitted that he could not tell, from the mere presence of an alcoholic odor, what Mr. Romanowski had had to drink, how much he drank, or when he drank it. He further agreed that the HGN test he administered could not tell him what Mr. Romanowski's blood-alcohol level was. It was nevertheless the officer's opinion, "[b]ased on the totality of the clues that [he] observed from the tests that were performed ***, the smell of an alcoholic beverage, the visual appearance of [Mr. Romanowski] with his eyes and his breath[, a]nd his inability to answer questions," that Mr. Romanowski was intoxicated.

¶ 6 After he had finished the field sobriety tests, Officer McGuire arrested Mr. Romanowski and placed him in the back of the officer's squad car. There, Mr. Romanowski made belligerent and at times incoherent remarks—including threats to the officer and the officer's family and claims that Mr. Romanowski was a government agent—before attempting to unzip his pants and urinate. Officer McGuire called for backup, which soon arrived to take Mr. Romanowski to the fourth district police station in Chicago. When Officer McGuire next encountered Mr. Romanowski, Mr. Romanowski was urinating on the floor of a processing room at the police station.

¶ 7 Officer McGuire moved Mr. Romanowski to a holding cell to complete the paperwork related to his arrest. This paperwork included reading Mr. Romanowski a document that Officer McGuire referred to as the "warnings of motorists." Over defense counsel's objection and after denying defense counsel's request for a sidebar, the circuit court permitted the officer to describe the contents of that warning to the jury:

"Q. [The State:] Please explain what the warning to motorists is?

A. [Officer McGuire:] That in Illinois, drivers when requested by a law officer to submit to three types of testing, either blood, breath or urine. And if you refuse to take one of those tests, the repercussions of that refusal will be a suspension of your driver's license.

Q. Did the defendant then agree to take any of those tests?

A. No, he did not.

Q. He refused to take the blood, breath or urine?

A. Correct."

¶ 8 Officer McGuire further testified that, at approximately 10:20 that evening, Mr. Romanowski was given *Miranda* warnings and, waiving his right to remain silent, agreed to answer the officer's questions. When asked if he knew where he was, Mr. Romanowski responded "Indiana." Mr. Romanowski responded to each of the officer's subsequent questions with profanity. According to Officer McGuire, Mr. Romanowski then fell "fast asleep" on a bench and was "snoring his head off." The officer finished his paperwork and, as part of the booking process, discovered that Mr. Romanowski's driver's license was suspended.

¶ 9 Officer McGuire told the jury that, both as a police officer and in his personal life, he had observed individuals under the influence of alcohol on thousands of occasions. It was his

opinion that Mr. Romanowski was under the influence of alcohol when he was found sitting in his vehicle with the engine running on the evening of May 16, 2013.

¶ 10    Following this testimony, the jury was excused and defense counsel was permitted to make a record concerning his objection to the testimony regarding the contents of the warning to motorists. Arguing that the civil consequences of a refusal to submit to blood-alcohol testing are not relevant in DUI cases and are highly prejudicial, defense counsel requested a mistrial. The circuit court denied the request, stating that:

> "I allowed that evidence to show a continued pattern of combativeness and let me go to my notes and get the exact words of the officer.
>
> The officer testified that he was cocky, combative and profane. The way he reacted in the police station, the way he treated the police officer throughout all of their encounter in the police station, when the police officer was trying to do his job was highly inappropriate, combative as he said, the policeman, he was cocky and profane. And I simply allowed that evidence to further the defendant's actions and explain everything he did when he was being confronted by the police officer in the police station."

¶ 11    The jury deliberated and found Mr. Romanowski guilty of aggravated driving while under the influence of alcohol. 625 ILCS 5/11-501(a)(2), (d)(1)(H) (West 2012). The circuit court denied Mr. Romanowski's motion for a new trial and sentenced him to 18 months' imprisonment, with credit for 340 days of time served, followed by 1 year of mandatory supervised release.

¶ 12    At the sentencing hearing, the circuit court granted the State's motion seeking reimbursement for the services of the public defender and ordered a $450 fee to be deducted from Mr. Romanowski's bond for this purpose.

¶ 13                                    JURISDICTION

¶ 14    Mr. Romanowski timely filed his notice of appeal in this matter on July 10, 2014, the same day he was sentenced. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013).

¶ 15                                     ANALYSIS
¶ 16                    A. Testimony Regarding the Warning to Motorists
¶ 17    Mr. Romanowski acknowledges that his refusal to take a blood-alcohol test was admissible at trial. Section 11-501.2(c)(1) of the Illinois Vehicle Code specifically provides for the admissibility of evidence of a driver's refusal to submit to blood-alcohol testing. 625 ILCS 5/11-501.2(c)(1) (West 2012). Our courts have long recognized that a defendant's refusal to take such a test is "relevant as circumstantial evidence of his consciousness of guilt." *People v. Garriott*, 253 Ill. App. 3d 1048, 1052 (1993). Mr. Romanowski argues, however, that the circuit court erred when it permitted the arresting officer to also testify to the contents of the admonishment he received warning him of the consequences of such a refusal.

¶ 18    Under Illinois law, any individual who "drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a

chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol *** in the person's blood" upon their arrest for driving while under the influence. 625 ILCS 5/11-501.1(a) (West 2012). A driver asked to submit to such a test must be warned by the requesting law enforcement officer that a positive test result (defined as an alcohol concentration of 0.08 or more) will result in a 6-month statutory summary suspension of the individual's driver's license, while a refusal to be tested will result in a 12-month suspension for a first offender or a 3-year suspension for a repeat offender. 625 ILCS 5/11-501.1(c) (West 2012) (requiring suspension); 625 ILCS 5/6-208.1(a)(1)-(3) (West 2012) (establishing length of the suspension). This is the warning described in Officer McGuire's testimony and referred to by the parties as the "warning to motorists."

¶ 19 Section 11-501.2(c)(1) of the Illinois Vehicle Code provides as follows:

"If a person under arrest refuses to submit to a chemical test under the provisions of Section 11-501.1, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof was driving or in actual physical control of a motor vehicle." 625 ILCS 5/11-501.2(c)(1) (West 2012).

¶ 20 Mr. Romanowski contends that the circuit court erred in admitting the arresting officer's testimony regarding the contents of the warning to motorists because such testimony is not specifically made admissible by section 11-501.2(c)(1) and that the statute should be interpreted to prohibit admission of such evidence in this case. The State responds that the circuit court allowed the testimony as a proper exercise of its discretion.

¶ 21 The admission of evidence is generally within the sound discretion of the circuit court, and we will not disturb a court's evidentiary rulings, absent an abuse of discretion. *People v. Morgan*, 197 Ill. 2d 404, 455 (2001). However, to the extent that admissibility of evidence requires the interpretation of a statute and its intended scope, our review is *de novo*. See *People v. Robinson*, 172 Ill. 2d 452, 457 (1996) (construction of a statute is a question of law reviewed *de novo*). Mr. Romanowski's primary argument here is that the statute prohibits admission of this testimony and that the trial judge did not have discretion to admit it.

¶ 22 Three cases have directly addressed the admissibility of the contents of the warning given to motorists in a DUI trial. In *City of Rockford v. Elliott*, 308 Ill. App. 3d 735, 739-40 (1999), the second district held that the probative value of testimony regarding the contents of the warning is outweighed by its prejudicial effect. The appellate court in *Elliott* construed section 11-501.2(c)(1) of the Illinois Vehicle Code as making only evidence of the refusal itself admissible. *Id.* at 738-39. In the court's view, to also allow evidence of the civil penalties the defendant faced when he refused was "an inappropriate expansion of the statute" amounting to a "double refusal." *Id.* Although it acknowledged that the evidence had "some probative value," the court nevertheless concluded that its relevance was outweighed by prejudice to the defendant. *Id.* at 739-40.

¶ 23 In two later cases, *People v. Lynn*, 388 Ill. App. 3d 272, 277-78 (2009), and *People v. Bock*, 357 Ill. App. 3d 160, 170-71 (2005), the fourth and first districts of this court, respectively, reached the opposite result, concluding that testimony regarding the contents of the warning to motorists was properly admitted in DUI cases.

¶ 24    The *Lynn* court "emphatically decline[d] to follow *Elliott*," holding instead that testimony regarding the warning to motorists is plainly relevant as circumstantial evidence of a defendant's consciousness of his own guilt:

> " '[A] driver's refusal to take a breath test is relevant because it implies that he believes he is intoxicated, something that he is clearly in a prime position to appraise. *** If a driver's refusal to take a breath test is relevant because it implies that he believes he is intoxicated, why would it not logically follow that the jury should be informed of the same factors that [the] defendant considered—namely, the civil penalties that would result from his refusal—when he decided to refuse the test? A reasonable inference under these circumstances is that [the] defendant was so afraid that the breath test would show he was intoxicated that he adhered to his refusal to take it *despite* having been informed of the severe civil penalties that would follow.' " (Emphasis in original.) *Lynn*, 388 Ill. App. 3d at 277-78 (quoting *People v. Dea*, 353 Ill. App. 3d 898, 902-03 (2004) (Steigmann, J., specially concurring)).

¶ 25    Similarly, the *Bock* court concluded there was no support for the narrow reading of section 11-501.2(c)(1) adopted in *Elliott*:

> "[W]e depart from the *Elliott* court's apparent conclusion that the statutory provision allowing admission into evidence of a driver's breath test refusal in any civil or criminal proceeding for acts relating to intoxicated driving [citation] precludes admission of the fact that a defendant had been advised of the civil consequences of refusing the test. The statute provides that 'evidence of refusal shall be admissible'; in our view, the *Elliott* court's discussion of the statutory language would be persuasive if the statute instead provided that 'only the fact of a driver's refusal shall be admissible.' We find no support in the language of the statute for the conclusion that the circumstances surrounding a driver's breath test refusal may not be admitted into evidence." *Bock*, 357 Ill. App. 3d at 170-71.

¶ 26    We agree with the reasoning articulated in *Lynn* and *Bock*. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Like the court in *Lynn*, we find the contents of the warning to motorists to be relevant circumstantial evidence of a defendant's consciousness of his own guilt. Although Mr. Romanowski did not have a valid driver's license at the time of his arrest, the warning was still pertinent to his decision to refuse testing because he would not be eligible to obtain a license until the summary suspension period expired. 625 ILCS 5/6-103(3) (West 2012). By refusing to be tested, Mr. Romanowski guaranteed that he would not be able to obtain a driver's license for at least a year, twice as long as if he submitted to testing and returned a positive result. We therefore disagree with Mr. Romanowski's assertion that "the probative value of the contents of the warning [i]s minimal at best." To the contrary, the probative value of Mr. Romanowski's refusal to be subjected to a blood-alcohol test is most fully recognized when put in the context of the civil penalties Mr. Romanowski knowingly accepted as a consequence of his decision.

¶ 27    Mr. Romanowski argues that the circuit court admitted the warning to show "combativeness" and it was not relevant to that. It is unclear whether the circuit court permitted the arresting officer to testify regarding the contents of the warning to motorists only "to show [Mr. Romanowski's] continued pattern of combativeness," or to explain and put in context

"everything" that Mr. Romanowski did when confronted by the police officer. We agree with Mr. Romanowski that the contents of the warning are not relevant to his combativeness, which was otherwise detailed extensively. It does not matter. The testimony was otherwise relevant to establish Mr. Romanowski's guilt. We can certainly affirm the circuit court's ruling on that basis. See *People v. Dinelli*, 217 Ill. 2d 387, 403 (2005) (a reviewing court "may affirm the circuit court on any basis supported by the record").

¶ 28 Of course, relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Ill. R. Evid. 403 (eff. Jan. 1, 2011). "In this context, prejudice means an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror." (Internal quotation marks omitted.) *People v. Lewis*, 165 Ill. 2d 305, 329 (1995).

¶ 29 Mr. Romanowski makes a number of arguments in an attempt to convince us that admission of this evidence was unduly prejudicial. He argues that the warning to motorists "alerts the jury to the fact that the defendant is already being punished for th[e] incident, which implies that he was doing something wrong" and insists it is improper for a court to allow "evidence that a defendant has already been subjected to a punishment for the same actions for which he is currently on trial." This argument is unconvincing. The civil penalties contained in the warning to motorists serve not as a punishment for driving while under the influence, but as an incentive for an arrested motorist to submit to blood-alcohol testing.

¶ 30 Mr. Romanowski argues that testimony concerning the warning to motorists is unduly prejudicial because it "undermines the presumption of innocence." But evidence of guilt *always* undermines the presumption of innocence. Evidence is *unduly* prejudicial only if it "cast[s] a negative light upon the defendant *for reasons that have nothing to do with the case on trial*" (emphasis added and internal quotation marks omitted) (*Lynn*, 388 Ill. App. 3d at 278), or invites the jury to decide the case "on an improper basis, commonly an emotional one, such as sympathy, hatred, contempt, or horror" (internal quotation marks omitted) (*Lewis*, 165 Ill. 2d at 329). While the warnings may be circumstantial evidence of a defendant's guilt, this does not encourage a decision on any improper basis.

¶ 31 We likewise reject Mr. Romanowski's argument that testimony regarding the contents of the warning to motorists is unduly prejudicial because the jury may overvalue it and give it more credence than is warranted. The cases that Mr. Romanowski cites involving polygraph and DNA evidence are distinguishable, as they involve technical evidence a jury could view as "hav[ing] a special aura of certainty and mystic infallibility." (Internal quotation marks omitted.) *People v. Watson*, 2012 IL App (2d) 091328, ¶ 33. The evidence at issue here is not technical in nature but rather implicates basic common sense: a person is given an incentive to submit to testing and nevertheless refuses to be tested, indicating that he knows the results will be unfavorable to him.

¶ 32 Other cases that Mr. Romanowski relies on, in which courts have ruled that a defendant's refusal to take certain tests may be inadmissible also have no bearing here, where the statute expressly makes the refusal to take a blood-alcohol test admissible. Compare *People v. Eghan*, 344 Ill. App. 3d 301, 312-13 (2003) (holding a defendant's refusal to be tested for cocaine is inadmissible), and *People v. Ealy*, 2015 IL App (2d) 131106, ¶¶ 49-50 (holding a defendant's refusal to submit to DNA testing is inadmissible). In reaching its decision, the *Ealy* court specifically distinguished cases like this one where a DUI defendant refuses to submit to

blood-alcohol testing, on the basis that motorists have no constitutional right to refuse such testing. *Ealy*, 2015 IL App (2d) 131106, ¶ 66 (citing *People v. Johnson*, 218 Ill. 2d 125, 140 (2005)).

¶ 33 We furthermore reject Mr. Romanowski's argument that *Bock* "ignore[s] the maxim of statutory construction that when a statute expressly includes one thing—evidence that a motorist refused a breathalyzer—it may be inferred that all omissions therefrom—the contents of the warning to motorists—are intended to be excluded." As *Bock* points out, the statute does not expressly make "only" the fact of the defendant's refusal admissible, but rather "evidence of refusal," a phrase that invokes something broader. *Cf. People v. Dabbs*, 239 Ill. 2d 277, 283 (2010) (where the legislature has made "evidence of" prior offenses admissible in domestic violence cases, courts have not limited this to certified copies of convictions, but have allowed testimony by prior victims regarding the details of those offenses). Moreover, the "default" rule is that evidence is admissible at the circuit court's discretion. *Morgan*, 197 Ill. 2d at 455. Thus, this statute, that expressly makes specific evidence admissible, should not be read to prohibit admission of any omitted category of evidence. Such evidence, like the vast majority of evidence not provided for by statute, remains subject to this default rule.

¶ 34 We must likewise reject Mr. Romanowski's argument that the circuit court failed to instruct the jury regarding the limited purpose for which it could consider the arresting officer's testimony regarding the contents of the warning to motorists and that his attorney was ineffective for failing to request such an instruction. As we conclude that this evidence was not for the limited purpose of establishing Mr. Romanowski's combative behavior, no limiting instruction was required. The circuit court did not err in failing to give one and defense counsel was not ineffective for failing to request one. Because there is no arguable basis for a claim of ineffective assistance of counsel, we need not reach the State's argument in its motion to strike taken with this case that Mr. Romanowski failed to preserve the issue by raising it for the first time in his reply brief.

¶ 35 Finally, Mr. Romanowski argues that, by amending the Illinois Vehicle Code eight times since *Elliott*, but never changing section 11-501.2(c) to expressly make the contents of the warning to motorists admissible, "the legislature has tacitly accepted *Elliott*'s holding." We reject this logic, particularly where seven of those amendments took effect after *Bock* and six after *Lynn*, making it unlikely that the General Assembly's decision not to amend the section was in any way intended as an endorsement of the holding in *Elliott*. The cases Mr. Romanowski relies on are furthermore distinguishable because they involved statutes that were construed by the Illinois Supreme Court. See *People v. Hairston*, 46 Ill. 2d 348, 353 (1970) (where a statute and its predecessors had been "repeatedly and consistently construed" by the supreme court, it was "presumed that the legislature had acquiesced in the court's exposition of the legislative intent"); *People v. Agnew*, 105 Ill. 2d 275, 280 (1985) (concluding the legislature gave its "implicit approval" of the supreme court's holding that a statute imposing a fee applied to appellate court proceedings when it later amended the statute only to change the fee amount).

¶ 36 We also note that, even if we were to conclude that the testimony at issue was admitted in error, that error would have been harmless where other compelling evidence of Mr. Romanowski's guilt was presented in this case. Mr. Romanowski argues that, by failing to include citations to the record, the State has forfeited its argument that any error in this case was harmless. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Where the record is short and the

issue is a simple one, however, we may choose to address the issue despite a party's failure to provide citations to the record. *People v. Johnson*, 192 Ill. 2d 202, 206 (2000). We do so here.

¶ 37    A charge of aggravated driving while under the influence of alcohol is sustained where a trier of fact concludes, beyond a reasonable doubt, that (1) the defendant was in actual, physical control of a motor vehicle; (2) at the time of such control, the defendant was under the influence of alcohol; and (3) at the time of such control, the defendant did not possess a driver's license or permit. 625 ILCS 5/11-501(a)(2), (d)(1)(H) (West 2012). " 'A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007) (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)). Here, Officer McGuire, the sole witness at trial, testified that Mr. Romanowski did not have a valid driver's license; was found in his running vehicle smelling of alcohol with three empty beer cans in the rear seat; had to be helped from his vehicle; failed multiple field sobriety tests; was belligerent, unintelligible, and threatening to law enforcement; urinated on the floor of the police station during processing; and fell sound asleep following questioning. This testimony was unrebutted. See *Baker v. Hutson*, 333 Ill. App. 3d 486, 493 (2002) ("Where the testimony of a witness is neither contradicted by direct adverse testimony or by circumstances nor inherently improbable and the witness has not been impeached, the testimony cannot be disregarded by the fact finder." (citing *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981))). Unlike *Elliott*, this is not a case that "could have gone either way." *Elliott*, 308 Ill. App. 3d at 740. An error is considered harmless where, "consider[ing] the totality of the evidence presented," it "can safely [be] conclude[d] that a trial without th[e] error would produce no different result." *People v. Warmack*, 83 Ill. 2d 112, 128-29 (1980). Such is the case here. Although Mr. Romanowski's refusal to submit to blood-alcohol testing despite the civil consequences of such a refusal was relevant circumstantial evidence of his guilt, we can safely conclude that the jury would have found him guilty even if it had not been aware of those consequences.

¶ 38                                    B. Public Defender Fee

¶ 39    Mr. Romanowski argues that the $450 fee the circuit court ordered him to pay as reimbursement for the services of his public defender should be vacated where he was not provided with notice of a hearing, the amount of attorney fees was not properly established, and no effort was made to determine his ability to pay. Although Mr. Romanowski admits this issue was not properly preserved for review, the State has made no argument for forfeiture. See *People v. Williams*, 193 Ill. 2d 306, 347 (2000) (noting that forfeiture of an issue by the defendant is an argument that must be made in the State's brief or it is likewise forfeited). Our review of this issue is *de novo*. *People v. Elcock*, 396 Ill. App. 3d 524, 538 (2009).

¶ 40    Section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code) authorizes the circuit court to order a criminal defendant for whom legal counsel has been provided to pay a reasonable sum to reimburse the county or state for that representation. 725 ILCS 5/113-3.1(a) (West 2014). Before ordering payment, the circuit court is required to hold a hearing focusing on "the foreseeable ability of the defendant to pay reimbursement as well as the costs of the representation provided." *People v. Love*, 177 Ill. 2d 550, 563 (1997). It is undisputed that no such hearing was conducted here. The State filed its motion on July 10, 2013, and the circuit court granted it that same day at Mr. Romanowski's sentencing hearing, without questioning

the public defender regarding the scope of his representation and without making any inquiry into Mr. Romanowski's ability to pay. The State concedes that the order requiring payment must therefore be vacated, but urges us to remand the matter for a hearing that complies with section 113-3.1(a).

¶ 41 Section 113-3.1(a), however, clearly requires that such a hearing be held "no later than 90 days after the entry of a final order disposing of the case at the trial level." 725 ILCS 5/113-3.1(a) (West 2014). In support of remand, the State cites *Love*, in which our supreme court vacated a public defender fee and remanded for a hearing without referencing the 90-day requirement or addressing the fact that more than 90 days had passed since the circuit court issued its order. *Love*, 177 Ill. 2d at 559-60, 565. The State urges us to join cases like *People v. Fitzpatrick*, 2011 IL App (2d) 100463, ¶ 13, which acknowledge the statutory requirement but nevertheless follow *Love*, without attempting to reconcile the apparent conflict.

¶ 42 In *People v. Moore*, 2015 IL App (1st) 141451, ¶ 41, however, this court recently interpreted the statutory 90-day time limit as mandatory. There, the circuit court briefly questioned the attorneys regarding the public defender's involvement in the case but did not address the defendant at all before ordering him to pay a public defender fee. *Id.* The *Moore* court concluded that remand was improper, where no hearing took place within the required time frame; "[t]here was no inquiry, however slight, into the issue of the defendant's ability to pay the public defender fee, the defendant's financial circumstances and his foreseeable ability to pay or the defendant's financial affidavit, if any." *Id.*

¶ 43 *Moore* expanded on our supreme court's holding in *People v. Somers*, 2013 IL 114054, ¶ 15, that remand is proper where at least "some sort of a hearing," albeit an insufficient one, is initially held within the 90-day period specified in the Code. In *Somers*, although the circuit court failed to hold a formal hearing on the defendant's ability to pay a public defender fee, it did informally question the defendant regarding whether he suffered from any physical condition preventing him from working, whether he believed he could obtain employment upon his release from prison, and whether he planned to use his future income to pay his fines and costs. *Id.* Noting that the problem was thus "not that the trial court did not hold a hearing within 90 days, but that the hearing that the court did hold was insufficient to comply with the statute," the supreme court remanded for a new hearing that complied with section 113-3.1(a). *Id.* ¶¶ 15, 18.

¶ 44 Here, unlike *Somers* but as in *Moore*, no inquiry into Mr. Romanowski's ability to pay was made within the statutory time period. Accordingly, we vacate the public defender fee and decline the State's invitation to remand this matter for a belated hearing not in compliance with section 113-3.1(a).

¶ 45                                                   CONCLUSION

¶ 46 For the foregoing reasons, we affirm Mr. Romanowski's conviction and sentence for aggravated driving while under the influence of alcohol and vacate the circuit court's order requiring Mr. Romanowski to pay a $450 public defender fee.

¶ 47 Affirmed in part and vacated in part.