# Illinois Official Reports

## Appellate Court

*People v. Moore*, 2015 IL App (1st) 141451

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARL MOORE, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-1451 |
| Filed | November 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-250; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Affirmed in part; vacated in part. |
| Counsel on Appeal | Michael J. Pelletier and Katie Anderson, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Peter D. Fischer, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Neville and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant was found guilty of armed robbery with a handgun (720 ILCS 5/18-2(a)(2) (West 2012)) and was sentenced to an aggregate of 22 years' imprisonment. On appeal, defendant argues the trial court erred when it failed to suppress a witness's out-of-court and in-court identification of defendant. Defendant argues that those identifications were both unreliable and the product of an unnecessarily and impermissibly suggestive lineup. Defendant also argues that the court erred in ordering defendant to pay a $150 public defender reimbursement fee. For the following reasons, we affirm defendant's conviction but vacate his $150 fee.

¶ 2                                    BACKGROUND

¶ 3    Defendant was charged by way of information with armed robbery with a handgun. Prior to trial, defendant filed a motion to suppress the lineup identification as impermissibly suggestive. A hearing on the motion and the bench trial proceeded simultaneously.

¶ 4    Marshawn Earvin testified that on November 17, 2012, he and Deonte Jackson were walking to a bus stop at 91st and Princeton when they were approached by a group of men. Two men walked in front of them, while approximately five or six men walked up from behind them, and Earvin turned to face those men. Although it was dark out, the street lights were on and Earvin recognized defendant who was standing about three feet away. Earvin stated that he had seen defendant driving in a van in the neighborhood on a prior occasion. Defendant pushed Earvin and displayed a gun. Defendant pointed the gun at Earvin and ordered him to hand over his phone. Earvin identified defendant in open court.

¶ 5    Earvin testified that when he was initially reluctant to hand over his phone to defendant, defendant hit him on the left side of his face with a metal gun. He eventually handed over his phone and a pair of square diamond studded earrings. Another man took $20 from Earvin's wallet. Earvin contacted the police after the men left to report the robbery.

¶ 6    After speaking with his sister the following day, Earvin directed the police to an address at 91st and Princeton where he believed the offenders lived. No one was present at the time.

¶ 7    On November 25, 2012, Earvin went to the police station where he viewed a lineup. Prior to viewing the lineup he signed an advisory form that informed him that the suspect may or may not be in the lineup and that he was not required to make an identification. Earvin viewed the lineup and identified defendant as the person who pulled the gun on him and robbed him. He also identified a second man who was with defendant.

¶ 8    Following the lineup, the police showed Earvin an earring. Earvin identified the earring as the one that had been taken from him during the armed robbery. The earring was returned to Earvin.

¶ 9    Officer Rumbaugh was working with his partner Officer Ugarte on November 18, 2012, when he accompanied Earvin to the address at 91st and Princeton where Earvin believed the offenders lived. No one was there at the time. Officer Rumbaugh returned to that same address on November 25, 2012. When he and his partner arrived, they observed a vehicle parked in front of the residence. Five males were in the vehicle. As he and his partner approached, one of the occupants attempted to exit the vehicle. Defendant was seated in the vehicle. Officer Rumbaugh learned over the police radio that the vehicle had just been

reported as stolen so he and his partner arrested defendant, Shaquille Wilson, Rasheed Williams, Darien Richardson and Mikel Mables and took them to the station. When he was arrested, defendant had a diamond studded earring in his left ear. Officer Ugarte recovered the earring and inventoried it.

¶ 10    Officer Bowes testified that after he learned that defendant was in custody, he prepared a lineup for Earvin to view. Officer Bowes placed defendant, Shaquille Wilson, Rasheed Williams, Darien Richardson and Rakiel Mables, Vincent Grace and Allen Mikel in the lineup. Defendant and Wilson were involved in the investigation of the armed robbery of Earvin. Earvin identified defendant and Wilson as the offenders who robbed him at gunpoint. Earvin also identified his earring.

¶ 11    After the State rested, defense counsel argued that Earvin's lineup identification of defendant should be suppressed because the lineup was unduly suggestive given that the five men who were suspects in connection with the stolen vehicle were all placed in the same lineup, the lineup contained only two fillers, and defendant was wearing an earring matching the description of the earrings taken from Earvin during the armed robbery. The court denied defendant's motion to suppress noting that photographs admitted into evidence showing the lineup did not support the argument that defendant was wearing earrings in the lineup.

¶ 12    After denying defendant's motion for a directed verdict, the trial court found defendant guilty of armed robbery with a firearm and sentenced him to 22 years' incarceration; 7 years for the armed robbery plus a mandatory 15-year enhancement for the firearm. The court also ordered defendant to pay $150 to the public defender fee. It is from this judgment that defendant now appeals.

¶ 13                                    ANALYSIS
¶ 14                                A. Identification
¶ 15    Defendant argues that this court should reverse his conviction and remand for a new trial because the trial court erred in failing to suppress Earvin's identification of defendant. Defendant urges that Earvin's identification was the product of an unnecessarily and impermissibly suggestive lineup that contained five suspects and two fillers. Furthermore, defendant argues that the totality of the circumstances establishes that Earvin's identification was unreliable because Earvin did not provide the police with a description of the offender immediately after the offense and saw the offender for a brief time in the evening when his attention was distracted by the presence of a firearm.

¶ 16    We first address defendant's argument regarding the suggestive lineup. Defendant bears the burden of proving that a pretrial identification was impermissibly suggestive. *People v. Brooks*, 187 Ill. 2d 91, 126 (1999). In order to challenge an identification procedure, "the defendant must prove that the confrontation was so unnecessarily suggestive and conducive to irreparable misidentification that the defendant was denied due process of law." *People v. Ramos*, 339 Ill. App. 3d 891, 897 (2003). Even if a defendant meets this burden, the State may show by clear and convincing evidence that the identification was based on the witness's independent recollection. *Brooks*, 187 Ill. 2d at 126. A trial court's factual determination that an identification procedure was not unduly suggestive should not be reversed unless it is against the manifest weight of the evidence. *People v. Gaston*, 259 Ill. App. 3d 869, 874 (1994). However, the court's ultimate determination on a motion to suppress is reviewed *de novo*. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001).

¶ 17    Defendant claims that the seven-person lineup was unnecessarily suggestive because it contained five suspects to the crime and two fillers. Defendant cites to numerous case studies about eyewitness identification to support his argument that a lineup should contain at least five fillers because failure to include the minimum number of fillers increases the risk of misidentification and renders the lineup unnecessarily suggestive.

¶ 18    Defendant's repeated claim that there were only two fillers and five suspects in the lineup is not supported by the record. The record clearly shows that five of the seven people in the lineup were fillers. Officer Bowes stated that he used defendant and Wilson, who they believed were in the armed robbery, and five other people, some of whom were arrested with defendant in the stolen car, to stand in the lineup. There was nothing to suggest that the three other men arrested in connection with the stolen car were involved in the armed robbery. The police did not know, and there is nothing in the record to suggest, that any of the other men arrested in relation to the stolen car were involved in the armed robbery. The lineup contained only two suspects related to this incident.

¶ 19    Multiple suspects in the same lineup does not render the lineup impermissibly suggestive. Although defendant cites to numerous studies on eyewitness identification reliability in an attempt to sway us to find Earvin's identification of defendant was unreliable, we note that this court has upheld a lineup where multiple suspects were participants in a lineup. See *People v. Miller*, 254 Ill. App. 3d 997 (1993); *People v. Johnson*, 123 Ill. App. 3d 1008 (1984). Consequently, we find that the lineup in question here was not suggestive and the court's determination to deny defendant's motion to suppress was not against the manifest weight of the evidence.

¶ 20    Defendant also argues that the failure to include a minimum number of fillers in a lineup and the inclusion of multiple suspects in the same lineup are indicative of a suggestive lineup pursuant to section 107A-2 of the Illinois Code of Criminal Procedure of 1963. 725 ILCS 5/107A-2(f)(3)(A), (f)(3)(D), (j)(1) (West 2014).

¶ 21    As defendant is aware, the newly enacted section that he relies on became effective on January 1, 2015, and does not govern the lineup proceedings in this case. We therefore decline defendant's request to address the applicability of the principles contained therein to the facts of his case.

¶ 22    Defendant also challenges the reliability of Earvin's identification. Illinois applies the following factors to assess identification testimony: (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989). "A single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification." *Id.*

¶ 23    With respect to the first factor, the victim's opportunity to observe the offender, defendant argues that Earvin's opportunity to view defendant was extremely limited because the crime occurred in the evening, in a short time frame, and other assailants were present. We disagree. Earvin saw defendant's face from about three feet away when defendant pointed the gun at Earvin. Defendant's face was not covered. Earvin testified that even

though it was dark, the street lights were on. We find Earvin had ample opportunity to view defendant.

¶ 24 We next look to the witness's degree of attention to the details. Earvin paid a great deal of attention to details. He not only stood face to face with defendant, but spoke with him regarding his phone. In addition, Earvin stated that he recognized defendant because he had previously seen him driving a van around the neighborhood. Third, we consider the accuracy of the witness's description of defendant. It is unclear from the record whether Earvin provided a physical description to the police at any time. Fourth, we consider the level of certainty the witness demonstrates in identifying defendant as the offender. Earvin positively identified defendant in the lineup. Prior to the lineup, Earvin received and signed a lineup advisory form stating that the offender may or may not be in the lineup and that he was not required to make an identification.

¶ 25 Finally, we consider the amount of time between the commission of the crime and the identification. The armed robbery occurred on November 17, 2012. Earvin identified defendant as the offender in a lineup on November 25, 2012, eight days later. This close proximity in time supports the reliability of the identification here, and Earvin was positive in making that identification.

¶ 26 After considering all five *Biggers* factors, we consider Earvin's identification testimony to be reliable.

¶ 27                                                   B. Public Defender Fee

¶ 28 Finally, defendant argues that we should vacate outright the $150 public defender reimbursement fee imposed against him without notice or a hearing. The State responds that the fee should be vacated, but maintains that we should remand the matter for a proper hearing. Thus, the issue is not whether the public defender fee was properly assessed but whether the proper remedy is to remand for a hearing consistent with section 113-3.1(a) of the Code of Criminal Procedure (Code) (725 ILCS 5/113-3.1(a) (West 2012)).

¶ 29 Section 113-3.1(a) provides that where the defendant has been appointed counsel, the court may order defendant to pay the clerk of the circuit court a reasonable sum to reimburse either the county or the State for such representation. At a hearing to determine the amount of payment, the court shall consider the affidavit prepared by defendant and any other information pertaining to his financial circumstances. Such hearing shall be conducted on the court's own motion or on motion of the State's Attorney at any time after the appointment of counsel but no later than 90 days after the entry of a final order disposing of the case at the trial level. *Id.*

¶ 30 After defendant was sentenced, the State reminded the court that it had earlier filed a motion for reimbursement of attorney fees. The court addressed defense counsel and asked him how many times he had appeared in this case. Defense counsel replied, "Judge, I have appeared–there was a private on this case. I have appeared seven times, and there were additional appearances by Ms. Webber I believe two times." The court responded, "All right. A hundred fifty dollars should be appropriate."

¶ 31 Although defendant urges us to consider this claim under the plain error rule because he failed to raise his claim of error in the trial court, we will not apply the forfeiture rule where a trial court imposes the fee without following the proper procedural requirements. *People v.*

*Carreon*, 2011 IL App (2d) 100391, ¶ 11. A trial court may not impose a public defender fee in a perfunctory manner. *People v. Somers*, 2013 IL 114054, ¶ 14. Rather, "the court must give the defendant notice that it is considering imposing the fee, and the defendant must be given the opportunity to present evidence regarding his or her ability to pay and any other relevant circumstances." *Id.* Where the court in its discretion decides to impose the fee, a hearing is mandatory, not discretionary, and the court should not only consider a defendant's financial circumstances but his foreseeable ability to pay. *Id.*; *People v. Love*, 177 Ill. 2d 550, 556 (1997). Whether the trial court complied with section 113-3.1(a) in imposing the fee presents a question of law, which we review *de novo. People v. Gutierrez*, 2012 IL 111590, ¶ 16.

¶ 32        Here it is undisputed that the trial court imposed the public defender fee of $150 without holding a sufficient hearing to determine defendant's financial circumstances and his ability to pay. Accordingly, we vacate the order.

¶ 33        The State argues that this exchange between the trial court, the State and defense counsel is a hearing but not a hearing sufficient to meet the requirements of section 113-3.1(a) and, therefore, remand for a new hearing is required. Defendant contends that there was no hearing pursuant to section 113-3.1(a) because the court never inquired into his circumstance and his ability to pay, therefore this court has no authority to remand for a proper hearing because more than 90 days have passed since the dispositional order was entered.

¶ 34        The issue, again, is what is the appropriate remedy where the court exercised its discretion and assessed a public defender fee and the fee is vacated on appeal because the trial court failed to hold a hearing required under section 113-3.1(a). There are instances where Illinois courts have vacated the public defender fee without remanding for a hearing. In *Gutierrez*, the supreme court vacated the fee outright, without remand, because the fee was imposed by the circuit court clerk, rather than the trial court, and the statute did not authorize the imposition of the fee by the circuit court clerk. *Id.* ¶ 24. In *People v. Daniels*, 2015 IL App (2d) 130517, we vacated defendant's public defender fee because it was imposed by written order and "the trial court made absolutely no reference to the public defender or to its intent to impose the fee." *Id.* ¶ 29. Although the fee was imposed on the same date as sentencing, the court made no reference to the public defender or its intent to impose the fee. *Id.*

¶ 35        Conversely, there are also cases where Illinois courts have vacated the public defender fee and remanded to the trial court for a hearing in accordance with section 113-3.1(a). In *People v. Somers*, 2013 IL 114054, ¶ 4, after the defendant pled guilty and the trial court imposed sentence, the trial court asked defendant three questions regarding his financial circumstances and ability to pay a public defender fee. On appeal to the supreme court, the defendant argued that the fee must be vacated outright since the trial court failed to fully comply with section 113-3.1(a) of the Code. *Id.* ¶ 12. Our supreme court vacated the fee finding that the extent of the trial court's questioning defendant about his financial circumstances did not satisfy the requirements of section 113-3.1(a), and remanded the cause for a proper hearing in compliance with section 113-3.1(a). The court stated:

> "Just as clearly, though, the trial court did have *some sort of a hearing within the statutory time period.* The trial court inquired of defendant whether he thought he could get a job when he was released from jail, whether he planned on using his future income to pay his fines and costs, and whether there was any physical reason

why he could not work. Only after hearing defendant's answers to these questions did the court impose the fee. Thus, we agree with the State's contention that the problem here is not that the trial court did not hold a hearing within 90 days, but that the hearing that the court did hold was insufficient to comply with the statute." (Emphasis added.) *Id.* ¶ 15.

¶ 36    In *People v. Williams*, 2013 IL App (2d) 120094, the defendant argued that, unlike in *Somers*, the trial court did not ask him any questions at all about his ability to pay, and did not consider his certificate of assets, which, in any event, showed that he had no assets and no employment. The defendant argued that there could be no remand for a hearing on his ability to pay, because there was no timely hearing in the first place.

¶ 37    The *Williams* court disagreed with defendant finding that *Somers* requires only that the trial court hold "some sort of a hearing within the statutory time period." (Emphasis and internal quotation marks omitted.) *Id.* ¶ 18. The court continued,

"While the trial court in *Somers* asked the defendant a few questions related to his finances, our supreme court never stated that such questioning was required for a hearing. Rather, the supreme court stated that a hearing 'clearly' took place (*id.*), implying that less would also suffice to constitute a 'hearing.' Black's Law Dictionary defines a 'hearing' as a 'judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or law, sometimes with witnesses testifying.' Black's Law Dictionary 788 (9th ed. 2009); see also *People v. Johnson*, 206 Ill. 2d 348, 358 (2002) (citing same definition of 'hearing'). The proceeding here, while obviously insufficient to meet the requirements of section 113-3.1(a), still met this definition of a 'hearing,' as it was a judicial session open to the public, held to resolve defendant's representation by the public defender." *Id.* ¶ 20.

The *Williams* court held that, similar to *Somers*, the trial court conducted "some sort of a hearing" on the issue of the public defender fee within the statutory time period. Like *Somers*, the trial court's error was not in failing to hold a hearing within 90 days, but instead in failing to hold a sufficient hearing. *Id.*

¶ 38    We disagree with *Williams* that the *Somers* court intended for "some sort of a hearing" to include a hearing where there was no discussion of the amount of fees to be imposed or defendant's ability to pay them. In finding that "some sort of hearing" on the public defender fee was sufficient to trigger remand for a proper hearing, the *Williams* court failed to recognize the significance of the factual differences in S*omers*. In *Somers*, before ordering defendant to pay the public defender fee, the trial court asked whether defendant thought that he could get a job when he was released from jail, and defendant responded, " 'I'm hoping so.' " The court then asked defendant if he would use that to pay his fines and costs, and defendant replied, " 'Yes, ma'am.' " Finally, the court asked defendant if there was any physical reason why he could not work, and defendant said, " 'no.' " *Somers*, 2013 IL 114054, ¶ 4.

¶ 39    Although insufficient to satisfy section 113-3.1(a) requirements, the trial court in *Somers* did have "some sort of hearing" when it delved into the area of defendant's financial circumstances by asking about his employment and his ability to work. In *Williams*, as in this case, there were no questions whatsoever posed to defendant regarding his financial status, his employment, his ability to work, or his ability to pay. The trial court did not address defendant at all. In addition, there is no indication that in imposing the fee, the trial court

consulted the presentence investigation report or any affidavit that defendant may have filled out regarding his assets after requesting the services of the public defender. In short, there was no "sort of hearing."

¶ 40    In our view, "some sort of hearing" is more than the mere imposition of the public defender fee by way of a pronouncement in open court while the defendant is present. At minimum it requires compliance with the directive given by our supreme court in *Somers*:

> "Rather, the court must give the defendant notice that it is considering imposing the fee, and the defendant must be given the opportunity to present evidence regarding his or her ability to pay and any other relevant circumstances. [Citation.] The hearing must focus on the costs of representation, the defendant's financial circumstances, and the foreseeable ability of the defendant to pay. [Citation.] The trial court must consider, among other evidence, the defendant's financial affidavit. [Citations.]" *Id.* ¶ 14.

¶ 41    Consequently, we decline the State's invitation to remand for a proper hearing under section 113-3.1(a) because the trial court's questioning the attorneys regarding the public defender's involvement in this case was not a hearing as articulated in *Somers*. There was no hearing within the 90-day required period, because there was no inquiry, however slight, into the issue of the defendant's ability to pay the public defender fee, the defendant's financial circumstances and his foreseeable ability to pay or the defendant's financial affidavit, if any.

¶ 42    We also note that remand, even if an arguable case could be made to do so, would be a remedy that would be of no practical purpose. The trial court exercised its discretion and concluded $150 was an appropriate fee payable to the county. Considering what a remand would entail, it simply does not make any sense to order that remedy. The phrase "a dollar chasing a dime" comes to mind: the cost of transporting the defendant from a Department of Corrections institution to the Cook County jail while accompanied by security officers would be significant. After a hearing is scheduled and other pending matters are delayed, presumably the defendant would again be provided a public defender and the trial court, the prosecutor(s), a court reporter, and deputy sheriffs would be required to attend the hearing. After a hearing, consistent with the requirements of *Somers*, defendant would be transported back to Cook County jail and later transported to some facility within the Department of Corrections. The monetary costs incurred by the taxpayers of the county and the State, during a period of severe budgetary stress, coupled with the usually stressed court docket simply does not justify an order of remand as a reasonable remedy for the failure to conduct the required hearing relating to the assessment of the public defender fee. We do not believe that the interests of the taxpayers or considerations of judicial economy are served by remanding this matter for a hearing on whether defendant should reimburse the county or the State $150.

¶ 43                                                   CONCLUSION
¶ 44    For the foregoing reasons, we affirm defendant's conviction and vacate defendant's $150 fee.

¶ 45    Affirmed in part; vacated in part.